# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JUSTIN COOK,**

      **Plaintiff,**

**v.**                                          **Civil Action No. 3:07cv91**
                                                **(Judge Bailey)**

**JIM RUBENSTEIN, et al.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

### I.  Procedural History

On July 19, 2007,  the *pro se* plaintiff  initiated this case by filing a complaint against the defendants pursuing a claim under 42 U.S.C. § 1983. On July 20, 2007, the plaintiff was granted leave to proceed *in forma pauperis*. On May 30, 2008, the plaintiff's motion to amend his complaint was granted.  On July 16, 2008, the undersigned conducted a preliminary review of the file and determined that the summary dismissal was not appropriate.  Accordingly, the Clerk was directed to forward a completed summons and a completed Marshal 285 Form for each defendant to the United States Marshal Service.

On August 12, 2008, the defendants, Jim Rubenstein, William Fox, Robert Hill, John Anderson, Shawn Markey, Roger Greathouse, Brian Moler, Barry Wren, Michael Henthorne, Andy Nething, Karol Payne, Judy Childers, William Hale, Frederick Howard and John Doe Officers filed a Motion to Dismiss for failure to state a claim. On August 13, 2008, a Roseboro Notice was issued.  On November 19, 2008, the plaintiff filed a response.  On August 19, 2008, the defendant, Larry

Williamson[1], M.D., filed a motion to dismiss.  On August 20, 2008, a Roseboro Notice was issued.  On November 19, 2008, the plaintiff filed a response to Dr. Williamson's Motion to Dismiss.  On December 17, 2008, the defendants, Jim Rubenstein, William Fox, Robert Hill, John Anderson, Shawn Markey, Roger Greathouse, Brian Moler, Barry Wren, Michael Henthorne, Andy Nething, Karol Payne, Judy Childers, William Hale, Frederick Howard and John Doe Officers filed a second Motion to Dismiss alleging that the plaintiff had essentially abandoned his case, and the complaint was moot because the plaintiff is no longer incarcerated.  On December 18, 2008, a Roseboro Notice was issued. As of the date of this Report and Recommendation, the plaintiff has not replied.  On January 13, 2008, the defendant, Larry Williamson, filed a Motion for Joinder in Motion to Dismiss in the defendant's second motion to dismiss.  Also pending is a Motion to Dismiss Travis Fry Complaint that was filed by Larry Williamson on August 15, 2008.[2]

## II.  The Pleadings

### A.  The Complaint

In the complaint, the plaintiff asserts that on February 16, 2007, while he was incarcerated at St. Marys Correctional Center ("SMCC"), Captain John Anderson, Captain Sean Markey, Corporal Roger Greathouse, Sgt. Henthorne, Corporal Barry Wren, Corporal Brian Moler, and COII Andy Nething, used sadistic, malicious and excessive physical force against him for the sole purpose of causing him harm.  In summary, the plaintiff alleges that he was physically assaulted and pepper

---

[1]In his complaint, the plaintiff referred to Dr. Larry Williams.  However, his correct last name is Williamson.

[2]The plaintiff's complaint listed Travis Frye as a plaintiff, as well.  However, Mr. Frye did not sign the complaint and  did not submit a filing fee or an application to proceed IFP.  Therefore, Mr. Frye was never added as a plaintiff on the docket sheet.  Furthermore, it would appear from the West Virginia Division of Correction's website, that Mr. Frye is no longer incarcerated.

sprayed .[3] Following the incident, the plaintiff indicates he was taken to medical, placed in the shower and then transferred to Mount Olive Correctional Center ("MOCC"). Upon arriving at MOCC, he was processed and then placed in the shower again. The plaintiff alleges that he was seen by a nurse, who documented his injuries, and he was allowed to shower again. The plaintiff also alleges that an unidentified female officer photographed his injuries. The plaintiff alleges the black eye he received took almost three weeks to heal, he continues to have trouble focusing, and the initial effects from the pepper spray continued to linger for three to four weeks.

The complaint continues that he was served with rule violation documents that accused him of assaulting the above-mentioned officers at SMCC. He was taken to a rule violation hearing at MOCC on February 27 and 28, 2007. The plaintiff maintains that the Magistrate from SMCC, Nathan Hale, conducted the hearing by telephone. The plaintiff indicates that was found guilty of four assaults, sentenced to eight months in lockup, eight months of Loss of Privileges, 533 days loss of good time, and ordered to pay $57 restitution for a can of OC spray. The plaintiff maintains that the hearing report does not accurately reflect the testimony presented at the hearing. In addition, the plaintiff maintains that Magistrate Hale violated many of his procedural rights.

With respect to Jim Rubenstein, William Fox, Robert Hill, Karol Payne, and Judy Childers, the plaintiff makes no allegations that they were actively involved the alleged assault. Rather, he alleges that they either failed to respond to his fear of these officers and grant his request to be moved, failed to properly investigate his allegations during the administrative remedies process, or were aware of the violent tendencies of the officers involved in the alleged assault and continue to condone their behavior.

As relief, the plaintiff seeks an order declaring that his 8th Amendment rights have been

_____

[3]A full recitation of the plaintiff's allegations against these defendants is contained in the analysis portion of this Report and Recommendation.

violated.  In addition, he seeks preliminary and permanent injunctions against the WVDOC, Jim Rubenstein, Dr Larry Williamson, and any other doctor in charge of his medical care to provide him a hernia surgery and any other medical care he requires.  The plaintiff also seeks an injunction requiring the WVDOC to enforce a zero tolerance policy against officers who use excessive physical force against inmates and terminate the officers who participated in the assault.  Additionally, the plaintiff seeks an injunction requiring the WVDOC to employ an outside agency to come in the prisons and investigate excessive force complaints to provide inmates a fair and detached review of their complaints.  The plaintiff also seeks a reversal of his disciplinary hearing and restoration of his lost good time.  Finally, the plaintiff seeks compensatory and punitive damages against each defendant in the amount of $15,000.

### B.  **The Amended Complaint**

In his amended complaint, the plaintiff corrects the amount of damages he seeks from each defendant to the sum of $150,000.  The plaintiff also raises additional complaints that he is being denied internet access and out-of-cell exercise at MOCC.

### B.  **The Defendants' Answer**

In their answer to the complaint, the defendants assert that the plaintiff's complaint should be dismissed because the defendants did not use excessive force on February 16, 2007.  The defendants allege that, in fact, the defendants used force necessary to adequately control the situation.  With respect the to the plaintiff's claims  related to recreation and a website, the defendants note that the plaintiff has failed to name any defendant related to those claims.  Furthermore, the defendants contend that the plaintiff has not been subjected to cruel and unusual punishment by limiting his recreational activities.  Moreover, the defendants maintain that they have not violated the plaintiff's freedom of speech by denying him a personal web page and e-mail.  The defendants also maintain that the claims against

4

Magistrate Hall must be dismissed because members of disciplinary committees in any prison are entitled to immunity. The defendants also argue that the plaintiff's claims against those defendants not involved in the assault must be dismissed because the plaintiff cannot establish that these supervisors had actual constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the plaintiff or that there was any affirmative causal link between the supervisors inaction and the particular constitutional injury suffered by the plaintiff. Finally, the defendants assert that the plaintiff's complaints against the defendants must be dismissed because the defendants are entitled to qualified immunity.

## C.  **The Plaintiff's Response**

In his response, the plaintiff re-alleges his claim that the defendants used excessive force, without reason or provocation, solely for the purpose of causing harm. The plaintiff then sets forth the standard for assessing an 8th Amendment claim for cruel and unusual punishment and argues that he has met both the subjective and objective components to sustain his claim. In addition, the plaintiff argues that pursuant to a decision rendered by the United States Supreme Court, Magistrate Hale is not covered by absolute immunity. The plaintiff also argues that the defendants, Rubenstein, Fox, Hill, Howard, Childers, and Payne are guilty of deliberate indifference because they had actual or constructive knowledge of the actions taken by the other defendants and failed to take advantage of easily available measures to address the risk. The plaintiff also argues that the defendants are not entitled to qualified immunity because he has established that his constitutional rights were violated. With respect to his claim regarding out-of-cell exercise, the plaintiff maintains that he was subjected to extreme denials of exercise that caused him to endure a deprivation of a minimal civilized measure of life's necessities. The plaintiff also alleges that he has satisfied the Turner factors and  has stated a valid 1st Amendment claim with regard to internet access.

**D. Defendant, Larry Williamson's Motion to Dismiss**

The defendant, Larry Williamson, is a medical doctor, who was employed at SMCC. Dr. Williamson moves to dismiss the complaint against him arguing that even under the relaxed standard of review for pro se complaints, the plaintiff's complaint fails to state a cause of action for which relief may be granted regarding the plaintiff's allegation that he failed to properly treat his hernia. More specifically, Dr. Williamson argues that it is clear from the grievance documents attached to the plaintiff's complaint that he was not deliberately indifferent the plaintiff's medical condition. In addition, with respect the plaintiff's claim that he refused to speak to, did not care, and did not want to examine him after the pepper spray incident, Dr Williamson argues that the complaint again fails to state a claim of deliberate indifference.

**E. Plaintiff's Response to Dr. Williamson's Motion to Dismiss**

In his response, the plaintiff expounds on his allegation that Dr. Williamson was deliberately indifferent to the plaintiff's diagnosed inguinal hernia. The plaintiff maintains that prior to his 2005 arrest, he was examined by a surgeon at Ruby Memorial Hospital in Morgantown, West Virginia. The plaintiff alleges that this surgeon diagnosed the condition as needing immediate surgery to relieve the plain and the risk of the intestine becoming strangulated. The plaintiff further maintains that he was days from receiving the surgery when he was arrested. The plaintiff also maintains that his sentencing judge ordered that he be moved from the Eastern Regional Jail to DOC custody immediately and be provided hernia surgery. Finally, the plaintiff alleges that Dr. Mossy, another doctor at SMCC, examined him and recommended that he be given the corrective surgery.

**F. The Defendants' Second Motion to Dismiss**

Pursuant to Rule 41(2)(b) of the Federal Rules of Civil Procedure, the defendants have filed a second motion to dismiss. In support of their motion, the defendants state that the plaintiff was released

from the WVDOC custody on or about November 23, 2008. The defendants maintain that because the plaintiff has not provided the Court or them with an address, the plaintiff has essentially abandoned his lawsuit. The defendants also maintain that their motion to dismiss should be granted because the plaintiff's complaint is now moot as he is no longer in custody.

### III.  Standard of Review

**A.  Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957). Additionally, a district court should construe *pro se* petitions liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (emphasizing the liberal construction rule for *pro se* complaints raising civil rights issues).

### IV.  Analysis

**A.  Excessive Force**

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment.  Whitley v. Albers, 475 U.S. 312 (1986). The use of excessive force may constitute cruel and unusual punishment.  Hudson v. McMillian, 503 U.S. 1 (1992). An excessive force case has two prongs an objective prong and a subjective prong. Under the objective prong, the plaintiff must establish that "the alleged wrongdoing was objectively

'harmful enough' to establish a constitutional violation."  Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), *cert. denied*, 513 U.S. 1114 (1995)(quoting  Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Subjectively, the plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." Hudson, 503 U.S.  at 9;  Williams v. Benjamin, 77 F. 3d 756, 761 (4th Cir. 1996).

According  to  the  Fourth  Circuit  Court  of  Appeals,  "absent  the  most  extraordinary circumstances" an individual who suffers only *de minimis* injuries cannot prevail on an Eighth Amendment excessive force claim. Riley v. Dorton, 115 F.3d 1159 (4th Cir.)(en banc), *cert. denied*, 522 U.S. 1030 (1997); Norman , 25 F.3d at 1263.[4]  The Fourth Circuit Court of Appeals has further determined that a  *de minimis* injury reveals that *de minimis* force was used.  Norman, 25 F.3d at 1262. "The Eighth Amendments prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force  is  not  of  a  sort  'repugnant  to  the  conscience  of  mankind.'"  Hudson, 503 U.S. at  9-10. However, if  the force used  is  "repugnant to the conscience of mankind," i.e.,  "diabolic" or inhuman physical punishment, a prisoner can prevail on an excessive force claim even if the injuries sustained are *de minimis.*  Norman, 25 F.3d at 1263.

In their memorandum in support of their motion to dismiss, the defendants make numerous

---

[4] In both Riley and Norman, the Fourth Circuit Court of Appeals found that both the plaintiff's injuries and force used were *de minimis*.  In Norman, a jail officer began swinging his cell keys in the direction of the prisoner's face when the prisoner became disruptive.  The prisoner asserted that he put his hands up to cover his face, and the keys hit his  right thumb causing his right hand to swell.  The Court ruled that the prisoner sustained *de minimis* injuries proving that *de minimis* force was used. In Riley, the pre-trial detainee complained that he feared for his safety after the defendant police detective placed the tip of a pen in his nose and threatened to rip it open, and slapped the prisoner on the face.  The Court of Appeals extended Norman to pre-trial detainees and held that Riley sustained *de minimis* injuries, thus demonstrating the defendant used only *de minimis* force.

factual allegations, that if true, might warrant dismissal of the plaintiff's claim relating to the use of force on February 16, 2007. Specifically, the memorandum states:

> The plaintiff is approximately 6 foot 4 inches tall and weighs approximately 250 pounds. He is also an avid body builder. During a routine search of the entire facility, Justin Cook began to act agitated and suspicious. Thereafter, officer attempted to perform a standard strip search of Justin Cook. The search was conducted in a restroom to provide for his privacy. Justin Cook became extremely combative, injuring officers. He struck and/or otherwise injured four (4) guards. He further grabbed and damaged one officer's can of pepper spray. He used the brown piece of the pepper spray unit as a weapon. Thereafter, officers restrained the inmate and entered a hallway. In the hallway, the inmate once again became combative. To gain control of the situation, a short burst of pepper spray was administered by a correctional officer. After the spray was administered, he calmed down.

(Doc. 46, p. 1).

However, the defendants bald assertions, cannot support their motion to dismiss.[5] Nor do their selective recitation of the plaintiff's complaint. For instance, the defendants point out that the plaintiff admits that he told the officers "in an aggressive voice, I said I was nervous." They also emphasize that with respect to the pepper spray the plaintiff alleges that "one of the officers' can of pepper spray somehow exploded and discharged all over me when they jumped on me." Furthermore, they cite the plaintiff's admission that: "I called them cowards and told them they wouldn't get away with doing what they were doing." Accordingly, the defendants maintain that by the plaintiff's own admission, the officers were engaged in a good faith effort to maintain and restore discipline and were not acting to maliciously and sadistically cause harm. However, they conveniently ignore pertinent portions of the complaint. Of significant import is the following

---

[5]The undersigned's opinion might be different had the defendant's filed a Motion for Summary Judgment and submitted affidavits in support of their version of the events in question.

narrative from the plaintiff's complaint:

On February 16, 2007, officers at SMCC were conducting a facility-wide search for contraband. The entire compound was isolated from other units, an inmates on their units were restricted to their rooms. In preparation for the shakedown, I stripped off my mattress and stood it on its end, on top of the bed frame. I took all my property out of my box and set it on the bed frame with all of my property cards. I waited there in my chair from 10:00 a.m. until 2:00 p.m. waiting for the search.

When Officers entered my unit, Officer Greathouse and Captain John Anderson walked directly to my room #4 and ordered all the men to get their chairs and go to the day room. I immediately put down the newspaper I was reading, picked up my chair and tried to exit the room. As I was walking out of the room, Capt. John Anderson stepped in front of me and said why are you staring at me?" Spit was flying in my face and I replied that I was going to the day room like he told me too. I was speaking in a submissive tone because I was aware of this man's violence and I did not want him to harm me. He ordered me to put down my chair and I complied with his demands. Officer Greathouse was behind me and Captain Anderson was in front of the doorway. The two men got very close to me.

Capt. Anderson gave commands for me to open my mouth, lift my tongue, and tilt my head back. He struck me in the forehead with his palm even though I complied. He repeated these commands multiple times and I complied. He then wanted to pat search me. I lifted my arms and he patted me down very aggressively two times. His tone of voice and body language made me very intimidated. I was trembling as Officer Greathouse let me to the bathroom. Captain Anderson saw that I was trembling and said "what, are you getting mad?" In an aggressive voice, I said I was nervous.

As we entered the bathroom, I was ordered to disrobe. I took off my shirt and handed it to one of the Officers. Captain Anderson came up beside me and spoke to me in a soft tone. "Why are you disrespecting me? I don't disrespect you, do I?" I replied I am not disrespecting you. I have done everything you've asked. He threw my clothes on the floor, went to the door of the bathroom, looked around and went into a rage. First he kicked the door to the toilet stall, and then he pulled on the door of the paper towel dispenser violently like he was trying to rip it off the wall. Then he turned and swatted the soap dispenser off the wall with his right hand while he screamed "don't you ever disrespect me."

He said, don't you look at me, turnaround. I was watching him because I thought he was going to hit me. He then ordered me to place my hands on the back wall. I turned and I placed my hands on the wall. I was ordered to take off my shoes. I kicked my shoes off and an Officer picked them up. I turned and placed my hands on the back wall again. The Officers commanded me to take off my pants. I took off my pants and handed them to Officer. Markey on my left. I turned and placed my hands back on the wall. They told me to take off my socks. I took off my socks and handed them to Captain Markey. I turned and place my hands on the back wall. They ordered me to take off my underwear by "screening take your f***** underwear off now!" As I was taking my

10

underwear off, I was in a bent over position with my underwear half down my legs.

That's when Officer Greathouse gave the order to attack me. Officer Greathouse said "NON COMPLIANCE" and I was pepper sprayed from the sides and struck in the back of the head. I stood up and tried pulling up my underwear. At this point, I could not see because of the pepper spray. I was extremely frightened because I had witnessed what happened to Steven Kerns and had heard the rumors about these officers severely injuring other inmates. I turned and tried to get out of the bathroom to go in the day room where there were people who could witness what they were doing to me. I was grabbed and slammed on my back. I struck the back of my head on the sink as I fell. I could not see, but one of them struck me in the face and caused the busted blood vessel and black eye. I believe it was John Anderson who punched me in the face. I was also kicked in the ribs. After which, I could feel the officers piling on top of me.

One of the Officers can of pepper spray somehow exploded and discharged all over me when they jumped on me. I was receiving blows all over my body, and I was in serious pain from the spray. After that, I rolled over and was handcuffed and shackled. The officers were screaming obscenities at me while I was on the bathroom floor. I remember being called "you mother f*****." I replied that I wasn't going to do anything to them. They lifted me up by arms and I got to my feet. As I was being led out of the unit, I told them they had set me up just like they did Steven Kerns. I also called them cowards and told him they wouldn't get away with doing what they were doing. Once we were in the hallway, I was pressed up against the wall. I once again told the officers that I had done everything they told me, but they have set me up. We had some words back and forth, but I was not struggling. An officer was behind me holding me against the wall with his thumb pressed against the pressure point in the back of my jaw.

Sgt. Henthorne came into the hallway and ordered me slammed to the floor. Once I was on the floor, Sgt. Henthorne told me to shut my "f******" mouth or he was going to hurt me. I told him that I wasn't struggling and he needed to quit ruffin me up. Sgt. Henthorne  told another officer to hand him the pepper spray which he sprayed in my face, eyes, ears, neck, and back while I was laying on the ground. The officers put plastic ZIP ties around the ankles, even though I was shackled, and stood me up. Captain  Anderson was in front of me and told me they were going to take the cuffs off me when we got to Medical, daring me to try something. I told them I was burning and the zip ties were cutting  my legs. I asked them to get me a wheelchair, but they made me walk all the way to Medical with the ZIP ties around my legs. I ended up with severe cuts on my legs.

As previously noted, in ruling on the defendants' motion to dismiss, the court must accept as true the plaintiff's factual allegations.  Clearly, the facts recited above set forth an 8th Amendment claim for excessive force.  While the plaintiff's version of the events that took place on February 16, 2007 may be exaggerated or an outright lie, the court has nothing before it to support such a conclusion.  Thus, inasmuch as the plaintiff has stated a cognizable claim, the defendants' motion

to dismiss this portion of the complaint for failure to state a claim should be denied. However, for reasons discussed more fully below, the undersigned believes that this claim should be dismissed for failure to prosecute.

**B.  Jim Rubenstein**

Jim Rubenstein is the Commissioner of the West Virginia Division of Corrections. The plaintiff alleges that he was aware of the conduct of the correctional officers at SMCC and did nothing to discipline them. He further alleges that Mr. Rubenstein was aware that Dr. Larry Williamson did not provide proper medical care and did nothing to make sure his medical needs were met. More specifically, plaintiff alleges that although he filed grievances and a disciplinary appeal, Mr. Rubenstein upheld the challenged actions.

The United States Supreme Court has held that state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Will v. Michigan, 491 U.S. 58 (1989). The court considered a suit against a state official in his or her official capacity the equivalent of a suit against the state itself. Id. at 65. The court concluded that, absent any congressional intent to override state immunity, the Eleventh Amendment bars § 1983 suits against state employees in their official capacity. See id. at 56-57.

Conversely, a suit against an official in his or her individual capacity does not seek payment from the state treasury, but from the personal funds of the individual, and therefore, is not a suit against state or the state office that the individual occupies, and the individual is not protected by the holding of will. See Pontarelli v. Stone, 930 F.2d 104, 11 n. 17 (1ˢᵗ Cir. 1991). However, the mere fact that the plaintiff alleges that he is suing Mr. Rubenstein in both his individual and official capacity does not make him liable for any alleged wrongdoing. This court must analyze whether the

complaint alleges that he acted either outside the scope of his respective office or, if within the scope, acted in an arbitrary manner grossly abusing the lawful powers of his office.

Here it is clear that Mr. Rubenstein was acting within the scope of his position with the Division of Corrections when he denied the plaintiff's appeal of his administrative remedies. Furthermore the plaintiff has presented nothing to suggest that Mr. Rubenstein acted in an arbitrary manner which grossly abused the lawful powers of his office. Therefore the plaintiff's complaint against Rubenstein is clearly against his official capacity and is barred by § 1983. Therefore, Mr. Rubenstein should be dismissed as a defendant in this action.

**C. William Fox, Robert Hill, Frederick Howard, Judy Childers, and Karol Payne**

To the extent that plaintiff is suing these individuals in their individual capacity, he has failed to state a claim. In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*.   See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).

The plaintiff does not allege any personal involvement by these defendants with the attack he alleges occurred on February 16, 2007.  Instead, he alleges these defendants are responsible for their staff and their staff's actions. When a supervisor is not personally involved in the alleged wrongdoing, he  may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 Fed 2nd 1113 (4th Cir. 1982); Orum v. Haynes, 68  F.Supp.2d 726 (N.D.W.Va. 1999), or the following elements are met: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional

injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offense or practices,' and (3) there was an affirmative causal link between the supervisors inaction and the particular constitutional injuries suffered by the plaintiff." <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994), <u>cert. denied</u>, 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." <u>Id</u>. "A plaintiff may establish deliberate indifference by demonstrating a supervisors continued inaction in the face of documented widespread abuses.'" <u>Id</u>.

A careful review of the plaintiff's complaint establishes that he has failed to assert credible allegations to support a finding that the elements necessary to establish supervisory liability are present. Accordingly, these five individuals should also be dismissed as defendants.

## D. **William Hale**

William Hale is the Magistrate at the SMCC. It would appear that the plaintiff was issued a violation report in connection with the events of February 16, 2007. The plaintiff alleges that Magistrate Hale violated his right to a fair hearing, wrongly found him guilty, took all of his good time, and gave him eight-months lock-up. The plaintiff further alleges that Magistrate Hale refused to let him call witnesses and lead the testimony. The plaintiff contends that Magistrate Hale's conduct amounts to participation after the fact and this his participation in concealing the truth is proof he was deliberately indifferent to my right to be free from assault.

In <u>Butz v. Economou</u>, 438 U.S. 478, 508 (1978, the Supreme Court declared that "[a]lthough

a qualified immunity from damages liability should be the general rules for executive officials charged with constitutional violations, our decisions recognize that there are some officials whose special functions require a full exemption from liability. Applying the reasoning set forth in <u>Butz</u>, the Fourth Circuit has concluded that absolute immunity attaches to certain members of the executive branch when their role in administrative adjudicatory proceedings is functionally comparable to that of a judge. <u>See</u> <u>Ward v. Johnson</u>, 690 F.2d 1098 (4th Cir. 1982).

It is clear from reading the State of West Virginia Division of Corrections Policy Directive Number 325, that the role of a correctional magistrate[6] is functionally comparable to that of a judge. Accordingly, Magistrate Hale is entitled to absolute immunity and should be dismissed as a defendant.

## E. Dr. Larry Williamson

In his complaint, the plaintiff alleges that Dr. Williamson is the head doctor at SMCC and is responsible for inmate medical care. He alleges that Dr. Williamson was present in the medical unit after the assault but refused to examine or speak to him. In addition, the plaintiff alleges that Dr. Williamson previously refused to authorize corrective surgery for a hernia even though it caused him constant pain.

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless

---

[6]A correctional magistrate is a Division off Corrections' employee who is employed independent of the institutional chain of command to conduct inmate disciplinary hearings pursuant to division policy. Policy Directive 325.00 III Definitions.

exceptional circumstances are alleged.  <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[7]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. <u>Monmouth</u> 834 F.2d at 347.  Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment,  <u>Green v. Manning</u>, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment.  <u>Derrickson v. Keve</u>, 390 F.Supp. 905,907  (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery.  <u>West v. Keve</u>, 541 F. Supp. 534 (D. Del. 1982)

---

[7] The following are examples of what does or does not constitute a serious injury.  A rotator cuff injury is not a serious medical condition.  <u>Webb v. Prison Health Services,</u> 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. <u>Veloz v. New York</u>, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition.  <u>Brice v. Virginia Beach Correctional Center</u>, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition.  <u>Browning v. Snead</u>, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities.  <u>Finley v. Trent</u>, 955 F. Supp. 642 (N.D. W.Va. 1997).

(Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

Even if the plaintiff's hernia amounts to a serious medical condition, the plaintiff has not demonstrated that Dr. Williamson was deliberately indifferent to the condition. A review of the grievance forms submitted by the plaintiff establish that the plaintiff was examined on July 21, 2006 at which time Dr. Williamson discussed the hernia repair with the plaintiff and explained that at that time, the surgical procedure was elective. The plaintiff was offered lifting restrictions and stool softeners which he declined.. On July 31, 2006, the plaintiff was again examined, and Dr Williamson offered a truss or hernia belt, but the plaintiff refused the treatment. In addition, it is clear that the plaintiff had been prescribed Motrin to reduce his pain. (Doc. 1-2, p. 3).

The large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the plaintiff received "bad care," he did receive care. Accordingly, nothing in the plaintiff's complaint or attachments establishes any facts sufficient to support a finding that Dr. Williamson was

deliberately indifferent to his medical needs with respect to his hernia. Moreover, with respect to the plaintiff's allegations that Dr. Williamson refused to speak to him and did not want to examine him, the plaintiff's complaint also fails to establish a claim of deliberate indifference. While the plaintiff may have been in pain from the pepper spray and alleged beating, there is no allegation that his injuries were serious or that he suffered any further injury because Dr. Williamson did not examine him. Furthermore, Dr. Williamson's alleged refusal to speak to the plaintiff does not state a cause of action. Dennison v. Prison Health Services, No. 00-266-B-S., 2002 WL 31026529*7 (D. Me. June 7, 2002) (Magistrate Judge opinion noting "Without a sufficiently serious deprivation of medical care there can be no constitutional violation; a bad attitude by a prison medical provider toward an inmate is not in and of itself actionable."); Riviera vs. Alvarado, 240 F. Supp. 2nd 136, 143 (D.P.R. 2003)("A bad attitude by a medical provider or a doctor's negligence in his choice of medications or treatment is not actionable under the 8th amendment."). Accordingly, the plaintiffs fail to state a constitutional claim against Dr. Williamson, and he should be dismissed as a defendant.

**F.  Denial Of Out-Of-Cell Exercise And Internet Access**

In the plaintiff's Amended/Supplemental Complaint, he alleges that he was denied out of cell exercise and his first amendment rights were violated because he was not able to obtain printed e-mail or have a website. 42 U.S.C. §1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be

18

considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982)

In the instant case, the plaintiff does not name any person he alleges is responsible for his lack of exercise or internet access. Nor can the court assume who that individual might be. To the extent that the plaintiff is attempting to state a claim against MOCC or SMCC, the complaint fails. Neither MOCC or SMCC is a proper defendant because neither is a person subject to suit under 42 U.S.C. § 1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 200) (unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amendable to suit under 42 U.S.C. § 1983); and Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.") Accordingly, the plaintiff's allegations regarding exercise and internet access should be dismissed for failure to state a claim.

## G.  Motion to Dismiss Pursuant To Rule 41(2)(b)

On December 17, 2008, the defendants filed a Motion to Dismiss pursuant to Rule 41(2)(b). In support of their motion, the defendants state that on or about November 23, 2008, the plaintiff was released from the custody of the WVDOC. As noted in the defendants' motion, the plaintiff has failed to notify the court of his change of address.

On the July 19, 2007, the date the plaintiff's complaint was filed, he was sent a Notice of General Guidelines for Appearing *Pro Se* in Federal Court. That notice specifically informed the plaintiff that he must keep the court and opposing counsel advised of his most current address at all

times.  The notice also informed the plaintiff that failure to do so might result in dismissal of his action without prejudice.  In addition, the order granting the plaintiff's motion for leave to proceed *in forma pauperis* required the plaintiff to notify the Clerk of the Court immediately upon his transfer or release and provide a new address if know.  In bold print, the order warned the plaintiff that failure to notify the court of a change of address might result in dismissal of his case without prejudice.

Upon receiving the defendants' Motion to Dismiss  pursuant to Rule 41(2)(b), the undersigned sent the plaintiff a <u>Roseboro</u> Notice and had it mailed by certified mail, return receipt requested,  to his last know address as reflected on the docket sheet which was the MOCC.  In addition, the notice was sent to the plaintiff by certified mail, return receipt requested, restricted delivery, to an address in Martinsburg provided by the defendants through the WVDOC.   The plaintiff signed the restricted delivery notice on December 22, 2008.[8]  Accordingly, it is clear that the plaintiff has, in fact, been released from prison and that he received the <u>Roseboro</u> Notice.

Article III of the constitution requires that federal courts adjudicate only cases and controversies in which the controversy is live and ongoing, <u>Lewis v. Continental Bank Corp</u>., 494 U.S. 472, 477-78 (1990).  A case is moot when the "issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  <u>Slade v. Hampton Roads Regional Jail</u>, 407 F.3d 243, 249 (4th Cir. 2005) (citing <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969)).  In prison litigation cases, the Fourth Circuit consistently has held that when a prisoner seeks injunctive relief from allegedly unconstitutional prison conditions, a subsequent release or transfer from the challenged conditions renders the petitioner's

---

[8]The order sent to the plaintiff at MOCC was forwarded by the prison to the same address as the restricted delivery sent directly by the clerk.  That mail was returned as unclaimed.

claim moot. See e.g., Slade, 407 F.3d at 249; Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (prisoner's transfer to another facility rendered moot his claims for injunctive and declaratory relief); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); (holding that transfer of a prisoner rendered moot his claim for injunctive relief; and Inmates v. Owens, 561 F.2d 560, 562 (4th Cir. 1977) (holding one inmate is released "there is no longer...a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'").

Therefore, the plaintiff's release from custody renders moot his claims for injunctive relief. However, while a prisoner transfer or release moots a request for declaratory and injunctive relief, it does not moot a request for monetary damages. See Taylor v. Rogers, 781 F.2d 1047. 1048 m. 1 (4th Cir. 1986). In this case, the plaintiff's complaint seeks $15,000 from each of the defendants, and his amended complaint corrects his claim for monetary damages to $150,000 from each defendant. Accordingly, the plaintiff's claim of excessive force against defendants, Captain John Anderson, Captain Sean Markey, Corporal Roger Greathouse, Corporal Barry Wren, Sgt. Henthorne, Corporal Brian Moler, and COII Andy Nething, the only defendants against whom the plaintiff has stated a cognizable claim, is not mooted by his release.

Ordinarily, when a plaintiff fails to notify the court of a change of address, the matter is dismissed without prejudice. However, in this case, the undersigned is of the opinion that the plaintiff has done more than fail to notify the court of his change of address. He has essentially abandoned his claim. Up to the point of his release from incarceration, the plaintiff filed numerous motions and several letters. In addition, he responded to each Roseboro Notice sent to him. However, since his release, not only has he failed to notify the court of his new address, he failed to respond to the Roseboro Notice received and signed for by him on December 22, 2008.

Accordingly, the undersigned recommends that the plaintiff's complaint as it relates to defendants, Captain Sean Markey, Corporal Roger Greathouse, Corporal Barry Wren, Sgt. Henthorne, Corporal Brian Moler, and COII Andy Nething be dismissed with prejudice for failure to prosecute.

## V.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendant's Motion to Dismiss (Doc. 45) be **GRANTED IN PART AND DENIED IN PART**; the Motion to Dismiss Travis Frye Complaint (Doc. 49) be **DENIED AS MOOT**; the Motion to Dismiss by Larry Williamson (Doc. 53) be **GRANTED**; the Motion for Joinder in Motion to Dismiss by Larry Williamson  (Doc. 72) be **GRANTED**; the defendants' Motion to Dismiss pursuant to Rule 41(2)(b) of the Federal Rules of Civil Procedure (Doc. 67) be **GRANTED**; and the plaintiff's complaint (Doc. 1) and amended complaint (Doc. 12) be **DISMISSED WITH PREJUDICE.**

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are  made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.  In addition, the clerk is directed to send a copy to counsel of record as provided in the

Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: January 30, 2009

   /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE